**Jose PARRA, Appellant,**

v.

**LARCHMONT FARMS, INC., Appellee.**

No. 08–94–00030–CV.

Court of Appeals of Texas,
El Paso.

Feb. 29, 1996.

---

George McAlmon, David C. Hilton, El Paso, for Appellant.

Michael G. McLean, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

CHEW, Justice.

This case involves choice of laws. Appellant, Jose Parra, appeals the trial court's grant of summary judgment in favor of Appellee, Larchmont Farms, Inc. The trial court found as a matter of law that the exclusive remedy provision of the New Jersey Worker's Compensation Act barred Parra's common law negligence action in Texas against Larchmont, a New Jersey company. Pursuant to Rule 80(c), Texas Rules of Appellate Procedure, we issue the following order *sua sponte.*

## SUMMARY OF FACTS

In March 1990, Larchmont, a New Jersey employer, recruited and hired Parra, an El Paso County resident, to travel to and work in Larchmont's New Jersey peach orchards. On August 20, 1990, Parra fell off a tree ladder and sustained serious injuries. He received emergency medical treatment in New Jersey and, unable to continue working, returned home to El Paso. Some medical expenses were paid, but Parra never received any temporary or permanent disability compensation.

More than seven months after the accident, on April 1, 1991, Larchmont filed an Employer's First Report of Accidental Injury or Occupational Illness. Then, in November 1991, Parra filed a claim with the New Jersey Division of Worker's Compensation, which Larchmont responded to on January 9, 1992. It appears that by letter dated February 17, 1992, Parra sought to notify the New Jersey Division of Worker's Compensation that he was electing to proceed under the Texas Worker's Compensation Act and "not to proceed under the law of the state of New Jersey." On March 28, 1992, Larchmont filed a Motion to Dismiss Parra's worker's compensation claim on the basis that Parra had failed to appear for an independent medical examination that they had scheduled for him in New Jersey. A New Jersey Judge of Compensation granted the motion and dismissed Parra's claim on May 27, 1992. Meanwhile, Parra sued in El Paso County, Texas, on April 14, 1992.

Here, Larchmont moved for summary judgment and the trial court held that "after examining the pleadings and the summary judgment evidence and hearing the arguments of counsel, determines that Jose Parra's cause of action against Larchmont Farms, Inc. is barred by the exclusive remedy provisions of the New Jersey Workers' Compensation Act. N.J.STAT.ANN. § 34.15–8 (West 1990)."

## DISCUSSION

◼︎ Parra, in a single point of error, contends that the trial court erred in granting Larchmont's summary judgment because under Article 8306, § 19 of the Texas Worker's Compensation Act, he was covered as an out-of-state Texas employee when he suffered a work related injury while working in a foreign jurisdiction. Parra overlooks the fact that at the time of his injury, the Texas Worker's Compensation Act specifically ex-

cluded from its application "actions to recover damages for personal injuries ... [and] death resulting from personal injuries sustained by domestic servants, *farm laborers, ranch laborers....*" TEX.REV.CIV.STAT.ANN. art. 8306, § 2 (Vernon 1967)[Emphasis added]. *See also Texas Employers' Ins. Ass'n v. Derrick*, 207 S.W.2d 199 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.); *Texas Employers Ins. Ass'n v. Weber*, 386 S.W.2d 835 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). Therefore, the trial court's implied finding that the Texas Worker's Compensation Act did not apply to this suit was proper. As a matter of law, the Texas Worker's Compensation Act affords Parra neither a remedy nor benefit nor does it deprive Larchmont of its common law defenses if a negligence suit in Texas is proper. This, however, only begins our inquiry. We must now consider the conflict of laws that presents two issues: (1) does the New Jersey worker's compensation law apply to Parra's injury and, if so; (2) does the New Jersey law grant statutory immunity to Larchmont?

## STANDARD OF REVIEW

This Court has recently addressed the propriety of using traditional summary judgment standards to review a conflict of laws issue and concluded that the traditional summary judgment standards were generally not applicable. *CPS Int'l, Inc. v. Dresser Industries, Inc.*, 911 S.W.2d 18 (Tex.App.—El Paso 1995, writ requested). The Supreme Court has deemed the determination of which state's law will apply to a case to be a question of law. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). Determination of the content of another state's law is "subject to review as a ruling on a question of law." TEX.R.CIV.EVID. 202. However, favoring judicial restraint, traditional summary judgment review is used here for review of the outcome of the issue since there is no conflict in the evidence bearing on that issue. That is, we decide whether Larchmont carried its burden in showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law, and in that context, every reasonable inference must be indulged in favor of Parra and any doubt resolved in his favor. *Nixon v. Mr. Property*

*Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985).

## THE RECORD

The Larchmont's summary judgment evidence consisted of:

Exhibit 1. "Employer's First Report of Accidental Injury or Occupational Illness." This is a completed standard form, dated March 18, 1991 and filed April 1, 1991 with the New Jersey Division of Workers' Compensation. It represents that: (a) Parra was injured on August 23, 1990; (b) that he was injured picking peaches for Larchmont; (c) that he was unable to work after the injury and had not returned; and (d) that he was hospitalized. We also note the form's instructions that it be completed and mailed "not later than the start of the second (2nd) work day after injury occurred, in case of a fatal or serious injury (one that requires hospitalization)."

Exhibit 2. "Employee Claim Petition." This is a completed form filed by Parra with the New Jersey Division of Workers' Compensation on November 25, 1991. It states that Parra (a) worked for Larchmont; (b) was injured falling out of a peach tree on August 20, 1990; and (c) no temporary or permanent disability payment had been paid to Parra.

Exhibit 3. Affidavit of Carolyn Jackson. Ms. Jackson, Claims Representative for Farm Family Mutual Insurance Company, avers that Larchmont and its employees, including Jose Parra, were covered by worker's compensation insurance in accordance with New Jersey Statutes, Secs. 34:15–1 to –127. Further, that the insurer paid $19,960.06 for medical expenses.

Exhibit 4. 'Respondent's Answer to Claim Petition.' Larchmont filed this form with the New Jersey Division of Workers' Compensation. It avers: (a) Larchmont employed Jose Parra on the date of the accident; (b) that the injury arose out of and in the course of employment; (c) that Larchmont had knowl-

edge and notice of the injury on August 23, 1990; (d) that Parra's gross weekly wages were $200; and (e) that the scheduled rate of compensation is $140, and that payment of such is '[t]o be determined.'

Exhibit 5. 'Notice of Motion to Dismiss.' Larchmont filed this form with the New Jersey Division of Workmen's Compensation on March 28, 1992. It moves for dismissal of Parra's claim on the basis that Parra did not appear for a medical exam scheduled for March 4, 1992.

Exhibit 6. 'Order for Dismissal.' A completed multi-use form, dated May 8, 1992, issued by a New Jersey Judge of Compensation granting Larchmont's motion to dismiss for lack of prosecution.

Exhibit 7. Affidavit of Charles W. Haines, vice-president of Larchmont Farms, Inc. He avers that Larchmont and its employees, including Parra, were covered by worker's compensation insurance on August 20, 1990; that it was Larchmont's expectation that any injury suffered by an employee in the course and scope of employment would be covered by such insurance; and, that Larchmont would not be directly subject to a lawsuit since it had such insurance.

In response to Larchmont's summary judgment motion and evidence, Parra submitted his affidavit that essentially states he was residing in El Paso County in March 1990 when he was recruited and hired by Larchmont to perform farm labor in New Jersey. Parra traveled to New Jersey and worked in the orchards until August 20, 1990, when he fell off a tree ladder and was injured. Parra further states that he was sent to a doctor in New Jersey for medical treatment and afterwards he returned to his home in El Paso because he had "no place or means to live in New Jersey as a disabled person."

Finally, we take judicial notice of the New Jersey statutes and, in particular, the section cited by the trial court that reads:

34:15–8. Election surrender of other remedies

Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

## CHOICE OF LAWS

Larchmont contends that the trial court's judgment should be affirmed because: (1) Parra made an election and recovery under the New Jersey Act; (2) that this Court is bound to apply New Jersey law under the full faith and credit clause of the United States Constitution; (3) that the exclusive remedy provision of worker's compensation laws are entitled to deference as a matter of comity; (4) that the New Jersey law should be applied under the "most significant relationship" test; and (5) that New Jersey's worker's compensation statute is an exclusive remedy for work related injuries.

■■■■ 1. *Election of remedies.* We do not agree that Parra made an election of remedies and recovered. The record is clear that Parra did file a worker's compensation claim with the New Jersey Division of Worker's Compensation, but he never received any compensation for loss of wage earning capacity. Furthermore, and though Parra tried to withdraw his claim, his claim was dismissed on the motion of Larchmont. What Larchmont relies upon is the insurance carrier's payment of medical expenses; however, payment of medical expenses is not compensation under the scheme of worker's compensation under the case law of either New Jersey or Texas. *Millison v. E.I. du Pont de Nem-*

*ours & Co.,* 101 N.J. 161, 501 A.2d 505 (1985); *Pappano v. Shop Rite of Pennington, Inc.,* 213 N.J.Super. 305, 517 A.2d 178 (1986); *see Maryland Casualty Co. v. Hendricks Memorial Hosp.,* 141 Tex. 23, 169 S.W.2d 969 (1943); *Sanchez v. Texas Emp. Ins. Ass'n,* 618 S.W.2d 837, 843 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.); *see generally,* 2 ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW § 61.11 (1995). Worker's compensation is a security system, not a double or nothing gambling game, and the doctrine of election requires a successful selection of inconsistent remedies. *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 849–51 (Tex. 1980). Parra has made no election of remedy.

▇▇▇ 2. *Full Faith and Credit.* Larchmont next asserts that we are bound to apply the law of New Jersey under the full faith and credit clause of the United States Constitution. We disagree. We are not required to give any particular deference or subordinate our law to the laws of other states. *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). We do give due consideration and equal regard; however, one who challenges the right to sue in Texas, in common law or otherwise, because of a conflict with the law of a sister state, assumes the burden of showing upon some rational basis that of the conflicting interests involved, those of the sister state are superior to those of Texas. New Jersey courts hold no differently. *See Buccheri v. Montgomery Ward & Co.,* 19 N.J. 594, 118 A.2d 21 (1955); *Castilleja v. Camero,* 414 S.W.2d 424, 427 (Tex.1967).

Finally, we note that Section 183 of Conflict of Laws, Restatement (Second), recognizes the power of one state to provide a cause of action in tort even though a defendant employer is given immunity from such liability by the worker's compensation act of a sister state. Section 183 reads:

Availability of Remedy for Tort or Wrongful Death

A State of the United States is not precluded by the Constitution from providing a right of action in tort or wrongful death by the fact that the defendant is declared immune from such liability to the plaintiff by the workmen's compensation statute of a sister State under which the plaintiff (a) could obtain an award against the defendant, or (b) has obtained, or could obtain, an award against another person. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 183 (1971).

Consequently, we find that no constitutional requirement binds us to apply New Jersey law in this case.

▇▇▇ 3. *Comity.* Larchmont next argues that principles of comity also require this Court to give effect to the New Jersey worker's compensation law. Comity is a principle in which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. *Keene Corp. v. Caldwell,* 840 S.W.2d 715, 720 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). In the legal sense, it is neither a matter of absolute obligation, on the one hand, nor mere courtesy and good will, upon the other. It is the recognition within one state of the legislative, executive or judicial acts of another state, giving due regard to both interstate duty and convenience, and to the rights of its own citizens. *Gannon v. Payne,* 706 S.W.2d 304, 306 (Tex. 1986). The New Jersey worker's compensation law is not obnoxious to Texas public policy. In principle, it is identical to the worker's compensation laws of Texas and virtually every other State in the Union. Indeed, the New Jersey's act, at the time of Parra's injury, covered agricultural workers while Texas excluded them from coverage. However, we fail to see how allowing Parra a cause of action in our courts, in the face of denial of worker's compensation to him, undermines the New Jersey worker's compensation law. We are faced with the choice of either allowing him a tort remedy or denying him any remedy with the attendant risk of an uncompensated resident becoming a public charge because of the accident. We therefore conclude that comity does not compel us to apply New Jersey law here.

4. *Most Significant Relationship.* We next consider Larchmont's most persuasive argument. Texas follows the "most significant relationship" test, enunciated in Section

6 and applied through the case specific sections of Restatement (Second) of Conflicts of Laws in all conflict cases "sounding in torts." *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979). Section 6 sets out the general principles involved in a "most significant relationship" analysis and these principles are then applied through the relevant and case specific rules. The general principles set out in Section 6 are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2).

■ Section 145 contains the factual matters to be considered when applying the general principles to a tort case:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).

■ The Restatement is clear that neither the general principle nor the specific factual matters are to be applied as a mechanical formula. Both Sections 6 and 145 are also leavened by a concluding rule that: "These contacts are to be evaluated according to their relative importance with respect to the particular issue." The choice of laws turns not on the greater number of contacts but on their nature as measured according to their relative importance to the particular

issue. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

We are also guided by RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 184 which provides rules of immunity from tort actions where worker's compensation statutes are involved. *Osborn v. Kinnington*, 787 S.W.2d 417 (Tex.App.—El Paso 1990, writ denied). Section 184 reads:

Abolition of Right of Action for Tort or Wrongful Death

Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which

(a) the plaintiff has obtained an award for the injury, or

(b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local laws governs the contract of employment under the rules of §§ 187–188 and 196. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 184.

■ Application of the "most significant relationship" analysis involves two steps. First, the state contacts that are to be considered must be identified. *Duncan*, 665 S.W.2d at 421; *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 290 (Tex.App.—Corpus Christi 1991, writ denied). Because this issue involves a factual inquiry, the trial court's determination as to the identification of these contacts, given that the issue was determined at the summary judgment stage, is reviewed under the typical summary judgment standard of review. *Perry v. Aggregate Plant Products Co.*, 786 S.W.2d 21, 23–6 (Tex.App.—San Antonio 1990, writ denied). However, once the contacts have been identified, the question of which state's law will apply is one of law that is subject to de novo review. *Duncan*, 665 S.W.2d at 421; *Gutierrez*, 583 S.W.2d at 318; *Hull & Company,*

*Inc. v. Chandler,* 889 S.W.2d 513 (Tex.App.— Houston [14th Dist.] 1994, writ denied).

It is undisputed that: (1) the injury occurred in New Jersey; (2) the conduct (the negligence, if any, of Larchmont) occurred in New Jersey; (3) the domicile of Parra is Texas, while the domicile, place of incorporation, and place of business of Larchmont is New Jersey; and (4) the relationship between the parties was centered in New Jersey. Numerically, the contacts weigh in favor of application of New Jersey law; however, the number of contacts with a particular state is not determinative. *Duncan,* 665 S.W.2d at 421; *Academia, Inc.,* 802 S.W.2d at 290. Instead, the contacts are to be evaluated on a case by case basis as some contacts are more important than others because they implicate state policies underlying the particular substantive issue. Selection of the applicable law depends on the quality of the particular contacts. *Academia, Inc.,* 802 S.W.2d at 290–91; *Gutierrez,* 583 S.W.2d at 319.

Here, Parra is a sixty-year-old Texas resident, recruited in El Paso, Texas by a New Jersey corporation to do seasonal agricultural work. He traveled to New Jersey at Larchmont's expense to work for nine months in the peach orchards before returning home to El Paso. After working approximately five months, he was seriously injured when he fell off a tree ladder. Parra was injured in the course and scope of his employment with Larchmont. He was treated in a New Jersey hospital and then returned to El Paso, Texas when he could not continue to work.

Larchmont is a New Jersey corporation that owns and farms peach orchards in New Jersey. It carried proper worker's compensation insurance as it was required to do under New Jersey law. The Texas worker's compensation law, then in force, specifically excluded Parra's injury from coverage. Considering all these contacts, we are convinced that, under the most significant relationship test, the New Jersey worker's compensation law would, but for the circumstances discussed below be, applicable to Parra's injury.

5. *New Jersey's exclusive remedy provision.* We turn now to whether the exclusive remedy provision of the New Jersey law bars Parra from seeking a remedy in tort.

The Record is undisputed that Larchmont had actual notice and knowledge of Parra's injury on the day it occurred. However, Larchmont did not report the accident for more than seven months after the accident. The instructions on the "Employer's First Report of Accidental Injury or Occupational Illness" (Exhibit 1) state that the report is to be filed within two days of an accident involving hospitalization. *See* N.J.Stat.Ann. § 34:15–96 (West 1995). It is undisputed that Parra never received any temporary or permanent disability benefits.

Parra did file a timely claim for compensation under the New Jersey law. He was scheduled for an independent medical examination requested by the insurance carrier. It was conceded at oral argument that this appointment was for a doctor in New Jersey. There is no evidence in the record to establish that this medical exam was at a place reasonably convenient and accessible to Parra or that the insurance carrier offered payment of the necessary expense to travel to New Jersey for the medical examination. Parra's failure to have this medical examination was the basis for the Larchmont's motion for dismissal of Parra's worker's compensation claim. While we note that Parra submitted a copy of a letter in which Parra notified the New Jersey Division of Worker's Compensation that he did not wish to pursue his claim under New Jersey law, it is not clear that his letter was ever received or even considered as the basis for the dismissal of Parra's claim was clearly Larchmont's motion.

After a complete review of the record, we are left with the distinct impression that Parra's entitlement to worker's compensation benefits under the laws of New Jersey was unjustly, if not improperly circumvented. It is undisputed that Larchmont failed to comply with its obligation under the New Jersey Statute to timely report Parra's accident. It is clear from the record that Parra's New Jersey Worker's Compensation claim was contested by Larchmont and that Parra's claim was ultimately dismissed by his failure

to undergo a medical examination many months after he had returned to El Paso. It was conceded at oral argument that the medical examination was scheduled for a physician in New Jersey. It is clear from the record that Parra never received any worker's compensation benefits except for payment of some medical expenses.

The purpose and policy of the New Jersey worker's compensation law, like virtually every other jurisdiction including Texas, is founded upon a *quid pro quo* arrangement. The employee surrenders his or her right to sue the employer for negligence but gains speedy and certain compensation for his or her lost earnings and wage earning capacity for a work-related injury, regardless of fault. In the bargain, the employer accepts absolute liability for limited liability. *Dudley v. Victor Lynn Lines, Inc.*, 32 N.J. 479, 161 A.2d 479 (1960). While we may conclude that the substantive law of New Jersey should be applied in this case, there remain unanswered fact issues which cannot be drowned out by the simple incantation of "exclusive remedy." In the face of undisputed facts that Larchmont failed to abide by its statutory obligations under the New Jersey Worker's Compensation Act to "accept the provisions" of that statute, we decline, in the interests of justice and public policy, to find a irrebuttable presumption that there was an "[e]lection surrender" of Parra's common law action. *See* N.J.S.A. §§ 34:6A–33, 34:15–7, 34:15–8, 34:15–9, 34:15–28.1, and 34:15–96.

While we are constrained to apply Texas procedural laws and rules, even when considering the substantive law of a sister State, we previously sought to fashion what we believed to be an appropriate remedy which would approximate the action of a New Jersey court. Tex.Civ.Prac. & Rem.Code Ann. § 71.031 (Vernon 1986); *see In the Interest of Cassey D.*, 783 S.W.2d 592 (Tex.App.—Houston [1st Dist.] 1990, no writ). We abated this appeal for sixty days and ordered Parra to apply for reinstatement of his worker's compensation claim with the New Jersey Worker's Compensation Division. Larchmont has now vehemently challenged that action, contending our conclusion that New Jersey law should generally apply ended the

dispute and that we were required to dismiss Parra's appeal. Evident from our discussion above, we disagree. Parra's counsel, on the other hand, has apparently waited until well past the eleventh hour to apply for reinstatement and now seeks an extension of the stay and abatement. Without comment, we deny Parra's request.

We conclude that under the facts and circumstances of this case, which we hope are unique to this case, Larchmont was not entitled to a Summary Judgment and that Parra is entitled to a trial on his cause of action for negligence. We reverse and remand for a new trial.